Antone S. THOMAS et al.

v.

James ROSS et al.

No. 81–607–Appeal.

Supreme Court of Rhode Island.

June 1, 1984.

William P. Robinson III, John H. Blish, Edwards & Angell, Providence, for plaintiff.

Patrick O'Neill Hayes, Corcoran, Peckham & Hayes, P.C., Newport, for defendant.

1. Mr. Thomas is now deceased.

2. The Thomases' attorney drafted a judgment that was signed by the trial justice on September 25, 1981. At the time of signature, the trial justice was hearing cases in Providence County in the city of Woonsocket. The record in the case, however, remained in the Newport County Superior Court. Rule 4 of the Rules of Appellate Procedure states that a party has twenty days from the entry of judgment to file a Notice of Appeal to this court. The Rosses' appeal was filed on October 21—clearly outside the twenty-day period. However, the judgment appealed

## OPINION

KELLEHER, Justice.

This is the second chapter in a continuing controversy involving a tract of land in Little Compton, Rhode Island. The plaintiffs, Mary and Antone Thomas (Thomases),[1] brought suit in 1971 to have the defendants, James and Kathleen Ross (Rosses), remove obstructions to a right-of-way the Thomases claimed to own over the Rosses' property. The easement provided the Thomases with access to a main road and shoreline that were not otherwise accessible from their property.

When we were last visited by these principals in *Thomas v. Ross*, 119 R.I. 231, 376 A.2d 1368 (1977), we were asked to determine whether the Thomases' deed created the claimed right-of-way in their favor. *Id.* at 239, 376 A.2d at 1373. Although the trial court had decided the deed created no such right-of-way, we ruled otherwise and remanded the case for further consideration.

At the second trial, which took place in 1981, the parties presented evidence relating only to the Rosses' claim that the Thomases' right-of-way had been extinguished by the Rosses' adverse possession. At the conclusion of the presentation of evidence, the trial justice ruled that the evidence did not prove that the right-of-way had been extinguished, and he subsequently ordered the Rosses to remove all obstructions and encumbrances from the right-of-way.

It is from this decision that the Rosses now appeal.[2] They also question the very

from was not entered by the clerk of the Newport County Superior Court until October 9. Rule 77(d) of the Superior Court Rules of Civil Procedure provides that when a judgment is entered in open court in the presence of the parties or their counsel, no notice of the entry of the judgment is required. Otherwise, Rule 77(d) requires the clerk to serve notice of the entry by mail upon each party not in default for failure to appear, but failure of the clerk to comply with this requirement does not void the judgment. *McClellan v. Thompson,* 114 R.I. 334, 341, 333 A.2d 424, 428 (1975). The rule also authorizes a party to give notice of the

finality of the judgment, claiming that the trial justice failed to consider several issues that they had raised as affirmative defenses.

In answering this latter claim, we must refer back to the earlier decision. The Rosses raised as affirmative defenses to the Thomases' complaint the equitable doctrines of estoppel and unclean hands. The Rosses also claimed that the easement was unenforceable under the Little Compton subdivision regulations. However, since the trial justice had based his decision on the deed, these issues were not before this court in the first appeal.

As part of the procedural maneuverings of the parties after the remand, the Thomases moved for summary judgment. The Rosses made no cross-motion for summary judgment. However, they did file a memorandum and affidavits in opposition to the Thomases' motion. This opposition memorandum emphasized that an issue of fact existed with respect to one issue—the question of whether the easement was extinguished by the Rosses' adverse possession of it.

The Rosses' memorandum was persuasive, and the motion justice denied the Thomases' motion for summary judgment. He then restored the case to the trial calendar for disposition of all remaining issues.

The case was called for a second trial in June of 1981. As we stated earlier, the sole topic of interest that day was the adverse-possession question. Both the Thomases and the trial justice believed that after ten years of motions, trials, and appeals the case had boiled down to that one issue. Nevertheless, after the trial justice had entered judgment against the Rosses, the Rosses asked him to clarify this judgment, claiming that the equitable and subdivision defenses still needed resolution. However, the trial justice denied this request, stating that the matter should come to an end.

We find the Rosses' argument with respect to the finality of the trial justice's decision somewhat curious, because they argue that issues are still unresolved, yet they can point to no explicit action on their part which would alert the trial justice to their desire to have the other unresolved issues resolved.

Instead, the Rosses must argue from inference if they hope to succeed. They note that this court remanded all issues to the Superior Court. They note that in his denial of the Thomases' motion for summary judgment, the motion justice sent all issues to the trial court for disposition. They also note that their memorandum in opposition to the motion for summary judgment asked for a briefing schedule for the remaining issues.

Yet two crucial facts undermine the Rosses' claim. The first is that, at trial, they agreed that the adverse-possession claim was the "sole issue" that was before the court. Second, and perhaps most important, they never moved for summary judgment on the remaining equitable defenses and thereby never affirmatively placed them before the court.

This failure does not daunt their perseverance or diminish their hopes. They claim that a trial court need not have a summary-judgment motion before it in order to grant summary judgment in favor of the nonmoving party.

This position finds strong support in the federal decisions interpreting Rule 56 of the Federal Rules of Civil Procedure; *see, e.g., Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.1970); 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720 at 29 (1983). This court has implied that this course of action is appropriate. In *Berberian v. O'Neil*, 111 R.I. 354, 302 A.2d 301 (1973), we stated that it was proper for the trial court to enter summary judgment even though no cross-

---

entry of judgment by sending a copy of the judgment by mail to his adversary. Since the record is unclear as to the notice afforded the

Rosses' counsel, we shall not attempt to resolve this particular issue.

motion had been filed. "The practice of allowing summary judgment to be entered for a nonmoving party finds overwhelming judicial support." *Id.* at 356 n. 2, 302 A.2d at 302 n. 2.

 Although this course is permissible, that does not make the practice mandatory. A trial justice should grant summary judgment against the moving party only if it is clear that no issue of material fact exists and that the nonmoving party is entitled to judgment as a matter of law. Apparently this was not the case here. Since an issue of fact existed on the estoppel, unclean hands, and the subdivision regulations, the Rosses were not entitled to summary judgment as a matter of law.

 Trial on an installment-plan basis cannot be countenanced, and actions speak louder than words. The Rosses' action at the June 1981 trial is clear and convincing evidence that they abandoned the estoppel, unclean hands, and subdivision claims. The Rosses' counsel explicitly stated at the trial, in response to the trial justice's inquiry "What issue are you raising?" that they were raising only "[t]he matter of whether or not an easement has been extinguished." At the conclusion of the trial that day, counsel did not suggest that other issues existed, nor were any argued. This activity at the trial clearly indicates that the Rosses had decided to allow their case to stand or fall on the adverse-possession issue. Judicial economy dictates that the finality of the trial justice's decision be upheld and that we not permit appellants to profit by their tactical decision to rest on the adverse-possession question and then suffer a change of mind once the question has been decided against them. This case was first initiated in 1971. The Rosses have had a decade to hone their theory of the case. They cannot now come before this court and request a further delay on the basis of a willful decision at trial.

Having disposed of the procedural problem, we may now turn to the substantive issue in dispute—whether or not the Thom-ases' easement was extinguished by the Rosses' adverse use of the land in question.

 General Laws 1956 (1969 Reenactment) § 34–7–1 is the adverse-possession statute. In order for parties to succeed in the adverse-possession claim, they must show that they "have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands * * * claiming the same as his, her or their proper, sole and rightful estate * * *." Section 34–7–1. An easement may be extinguished by adverse possession. *Spangler v. Schaus*, 106 R.I. 795, 264 A.2d 161 (1970). However, in order to succeed under such a theory, the use of the easement by the party claiming adverse possession must show that he exercised complete dominion over the property. *See, e.g., Tiffany v. Babcock*, 51 R.I. 350, 353, 154 A. 784, 785 (1931). The burden of proof "falls to the claimant to establish adversity and remains with the claimant to establish each element of adversity by strict proof." *Altieri v. Dolan*, R.I., 423 A.2d 482, 483 (1980).

This case was tried by a trial justice sitting without a jury. "[T]he findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless the record shows that the findings are clearly wrong or that the trial justice overlooked or misconceived material evidence." *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, R.I., 437 A.2d 1355, 1356 (1981).

The trial justice ruled that "the Court is not satisfied that the plaintiffs have proved to this Court that they have continuously, openly, notoriously become seized of this property in question." In reaching this conclusion, the trial justice emphasized that it was not clear that the easement had been occupied continuously for the statutory period. Furthermore, the court ruled that merely obstructing access to an easement does not constitute adverse possession of that easement.

954

■ Our review of the evidence and the applicable law indicates that this decision is correct and should be upheld. The testimony relied upon by the Rosses established only that cars were parked in such a way as to block access to the easement; however, they did not actually occupy the easement itself. Furthermore, it is not clear that the easement was continuously obstructed for the statutory period; obstruction occurred only when the Rosses were residing at the Little Compton property.

In support of their claim that obstruction of an easement suffices for adverse-possession purposes, the Rosses rely on *Patalano v. Duarte*, 68 R.I. 138, 26 A.2d 629 (1942). In *Patalano*, the Duartes had erected a fence that obstructed the Patalanos' right-of-way. The Duartes claimed that the easement was extinguished by adverse possession.

The court ruled that the easement was indeed extinguished but that there was more to the controversy than a fence. "The evidence also shows that since the Duartes acquired * * * the strip of land in issue they had plowed and planted it, raised produce, and pastured cows thereon and had otherwise generally used it for farming purposes." 68 R.I. at 142, 26 A.2d at 631. This continuous use of the easement as farm land plainly was entirely inconsistent with its use as a right-of-way.

The Rosses have offered no evidence so strong as that offered by the Duartes. While it is true that the Thomases had notice that the cars obstructed the right-of-way and that the Rosses claimed the easement as their own, their claim fails under the continuous-and-actual-possession requirements.

In *Perry v. Wiley*, 285 Ill. 25, 120 N.E. 455 (1918), the Illinois Supreme Court held that a fence erected so as to obstruct a right-of-way did not defeat the easement. The soundness of the rationale of this opinion has not diminished with age, and we do not hesitate to apply it here. The means may differ—cars as opposed to a fence—but the result is the same.

Since the Rosses did not prove that they had actual possession of the land in question and since they did not prove that the possession was continuous, we are bound to affirm the trial justice's decision.

The defendants' appeal is denied and dismissed, the judgment entered in the Superior Court is affirmed, and the case is remanded to the Superior Court.