**Dennis M. DALLMAN et al.**

v.

**Michael B. ISAACS et al.**

No. 2005–276–A.

Supreme Court of Rhode Island.

Dec. 18, 2006.

---

Gary J. Levine, Esq., Providence, for Plaintiff.

Elizabeth McDonough Noonan, Esq., Providence, for P.J.C. Realty Co., Inc.

Bennett R. Gallo, Esq., Coventry, for Hilda Hamilton Trust, et al.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiffs, Dennis M. Dallman et al.[1] (plaintiffs), appeal the Superior Court's grant of a motion for summary judgment in favor of the defendants, Michael B. Isaacs, John M. McGurk, Henry V. Boezi, Mathias C. Wilkinson and Kim A. Petti, in their capacities as members of the Town Council of the Town of East Greenwich (council),[2] as well as Hilda Hamilton Trust, Richard Hamilton Trust, James Malm, Paula Malm, and P.J.C. Realty Company,

---

1. This litigation began with two contingents of East Greenwich residents filing separate complaints on the same day in the Superior Court: Albert Shackleton et al. and Dennis M. Dallman et al., assigned the case numbers KC 04–1055 and KC 04–1056, respectively. By motion of P.J.C. Realty Co., Inc. (PJC Realty), these two actions were consolidated. By agreement of the parties, *Albert Shackleton et al. v. Arthur C. Barton et al.,* No. KC 04–1055, was dismissed with prejudice. Therefore, only the appeal of Dennis M. Dallman et al. (KC 04–1056) is before this Court.

2. This was the composition of the Town Council of the Town of East Greenwich (council) on the date of oral argument before this Court, November 8, 2006. As a result of the November 7, 2006 general election, Mark Schwager replaced Mathias C. Wilkinson when the new council took the oath of office on December 11, 2006.

Inc.[3] (PJC Realty) (collectively defendants). The motion justice concluded that the plaintiffs, who were displeased with the council's amendment of a zoning ordinance, had filed their complaint in the Superior Court after the thirty-day appeal period prescribed by G.L.1956 § 45–24–71(a) had expired. For the reasons set forth herein, we affirm the ruling of the Superior Court.

## I

## Facts and Travel

Hilda Hamilton Trust, Richard Hamilton Trust, James Malm and Paula Malm (owners) collectively owned certain real property in East Greenwich.[4] To ensure they could develop the property as planned, the owners filed a petition requesting an amendment to the East Greenwich Zoning Ordinance. Specifically, the petition asked the council to rezone the property from Manufacturing/Light Industry/Office to a zone entitled "Rocky Hill Fairgrounds," which, according to the petition, would be a "[d]evelopment of [an] Office/Light Industry/Manufacturing Park and [multiple single-family and multi-family homes]."

The council commenced its consideration of the owners' petition, conducting a first reading of the petition at its July 26, 2004 meeting. In accordance with the council's instruction at that meeting, notice of the petition, along with an announcement that it would be considered at a September 13,

2004 public hearing, was published in a local newspaper. In addition to an extensive summary of the petition's details, the published notice indicated that, if an ordinance were enacted in accordance with the petition, it would "allow the following uses[:] Multi-family dwelling, multi-single family [*sic*] dwelling, Offices, Hotels, Restaurants, private Education Center, Day Care Center, Health/Fitness Center, Light Industry, Office Park, Research and Development Facilities, Light Industry Park." The newspaper notice explained that "[a] complete copy of the proposed Ordinance, the Town of East Greenwich Zoning Ordinance and the Tax Assessor's Maps may be examined and copied at cost in the Office of the Town Clerk," giving the location and hours of operation for that office. The newspaper notice added:

"The proposed Ordinances may be altered or amended prior to adoption without further advertising, as a result of the views expressed at the public hearing. Any alteration or amendment will be presented for comment in the course of the hearing."

After the September 13 public hearing, the proposed amendment to the East Greenwich Zoning Ordinance was continued for consideration at three subsequent council meetings before finally being scheduled for a third reading and vote on October 26, 2004.[5] Before this final meeting, a list of nineteen conditions negotiated by the developer, planning director and

---

**3.** PJC Realty was not named as a defendant in plaintiffs' complaint. Instead, on December 31, 2004, PJC Realty filed a motion to join as a defendant pursuant to Rule 19 of the Superior Court Rules of Civil Procedure, or, in the alternative, to intervene pursuant to Rule 24 of the Superior Court Rules of Civil Procedure. The Superior Court granted this motion on January 14, 2005.

**4.** The East Greenwich property is described as assessor's plat No. 12A, lot Nos. 119, 76,

and a portion of 75, located at 1408 and 1492 Division Road.

**5.** According to the affidavit of then Director of Planning Lee R. Whitaker, the ordinance amendment in question was discussed first at the advertised September 13, 2004 meeting and then on September 27, October 12, and October 25, before it finally was passed at the October 26, 2004 meeting, for a total of five meetings.

town manager were submitted to the council. According to the minutes of the October 26 council meeting, these conditions "chang[ed] and increase[ed] some of the requirements" of the proposal. On October 26, the council was to select one of four options with regard to the proposed ordinance amendment and the negotiated conditions:

"(1) All the conditions together with the Planning Board's recommendation of October 20th, that includes language to be added to the zoning ordinance that the Planning Board do the phasing and also maintain the community character and existing quality of life;

"(2) Same recommendations as Option 1 together with the same language from the Planning Board with the exclusion of the language community character and existing quality of life;

"(3) Same recommendations together with what was presented by the developer and the letter that was delivered to the members of Council yesterday, noting certain phasing of items regarding Brook's [sic], the Restaurant, the development and included an office building which would be phased per the Council and then the remainder of the phasing would fall to the Planning Board;

"(4) Same recommendation of the developer minus the addition of the office building."

After a third reading of the petition, a discussion on the proposed conditions, and an opportunity for public comment, the council voted to approve the petition as amended during the hearing. The approved amendment included the original nineteen negotiated conditions, plus an additional five conditions proposed and approved during the hearing, for a total of twenty-four conditions. Thereafter, a written copy of the East Greenwich Zoning Ordinance, as amended, labeled Ordinance

No. 750, was posted in the town clerk's office on November 26, 2004.

On December 14, 2004, plaintiffs filed a complaint with the Superior Court pursuant to § 45–24–71, arguing that the amended ordinance did not conform to East Greenwich's Comprehensive Community Plan and Future Land Use Map because it "alter[ed] those uses allowable and envisioned by the Comprehensive Community Plan and Future Land Use Map, and [greatly increased] the density of allowable development on the premises." PJC Realty filed a motion for summary judgment on February 15, 2005, and a hearing date was set for Monday, March 28; the council added its own motion for summary judgment on March 15, but relied upon PJC Realty's memorandum to support its own motion. Each motion contended that plaintiffs' appeal was untimely, having been filed some nineteen days after the expiration of the thirty-day appeal period prescribed by § 45–24–71. The plaintiffs eventually filed an objection to defendants' motions on Friday, March 25, accompanied by the affidavit of Clayton Shackleton. The motion justice, however, did not receive these papers before the hearing on the following Monday. At the summary judgment hearing, the motion justice stated that plaintiffs' complaint had not been timely filed, and she accordingly granted defendants' motions for summary judgment. The plaintiffs appealed the motion justice's ruling.

The plaintiffs' appeal was assigned to this Court's show-cause calendar and was heard in April 2006. In an order dated May 4, 2006, we decided that cause had, in fact, been shown, and the matter was scheduled for full briefing. That order directed that the parties, in their briefs to this Court, specifically address the following two questions:

"1. For purposes of an appeal of an amendment to a municipal zoning ordinance in accordance with G.L.1956 § 45–24–71, when does a town council amendment to the zoning ordinance become effective—when the council votes on the amendment or at some later point in time?

"2. If the amendment does not become effective on the date of the council vote, when does it become effective?"

## II

### Analysis

On appeal, plaintiffs advance several legal arguments challenging the motion justice's ruling. First, plaintiffs maintain that, strictly for the purpose of filing an appeal to the Superior Court pursuant to § 45–24–71, the effective date of an ordinance amendment should be contingent not upon the date of its passage by the council, but rather upon its printing and publication in accordance with G.L.1956 § 45–6–7 and the Code of Ordinances of the Town of East Greenwich (East Greenwich Code). The plaintiffs point to other provisions of the General Laws to support their interpretation of § 45–24–71. In addition, plaintiffs insist that what they characterize as principles of fairness and justice require that the thirty-day appeal period prescribed by § 45–24–71 should not begin to run until the public has had an opportunity to view an amended ordinance in its final written form and thereby become able to ascertain whether a legal cause for objection should be pursued.

### A

#### Standard of Review

■■■ "This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *Andreoni v. Ainsworth,* 898 A.2d 1240,

1241 (R.I.2006) (quoting *DeCamp v. Dollar Tree Stores, Inc.,* 875 A.2d 13, 20 (R.I. 2005)). We will "affirm the judgment only if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Tanner v. Town Council of East Greenwich,* 880 A.2d 784, 791 (R.I.2005) (citing *Roe v. Gelineau,* 794 A.2d 476, 481 (R.I. 2002)).

■■■ Our *de novo* review, however, is not a panacea for a party's failure to raise in the lower court the specific legal basis for his or her objection to a motion for summary judgment. *See Konar v. PFL Life Insurance Co.,* 840 A.2d 1115, 1120 (R.I.2004) ("Although our review of summary judgment is *de novo,* it is not without limits."). " 'In reviewing a summary judgment award * * * we consider only those issues that were properly presented before the trial court.' " *Nedder v. Rhode Island Hospital Trust National Bank,* 459 A.2d 960, 962–63 (R.I.1983); *see also Konar,* 840 A.2d at 1120 ("The taking of an appeal does not provide the appealing party with a second bite at the apple. For example, a party may not assert an argument on appeal that was not presented below."). "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir.1995) (quoting *Vaughner v. Pulito,* 804 F.2d 873, 877 n. 2 (5th Cir.1986)). The party appealing an award of summary judgment cannot "advance new theories or raise new issues in order to secure a reversal of the lower court's determination." 10A Charles Alan Wright et al., *Federal Practice and Procedure Civil:* § 2716 at 282, 284, 286 (1998); *see also* 11 James WM. Moore, *Moore's Federal Practice*

§ 56.41[3][c] at 56–303 (3d ed. 2006) ("As a general rule, arguments and evidence not presented in the [trial] court in connection with a summary judgment motion are waived on appeal and the appellate court will be unable to consider these materials in its review of the [trial] court's decision.").[6]

## B

### Waiver

We are mindful that previously we issued an order in this case directing the parties to address specific questions, with which they have complied fully. However, after careful consideration of the record, we are constrained to decide this case in accordance with our well-settled raise-or-waive rule. *See Ahlburn v. Clark,* 728 A.2d 449, 452 (R.I.1999) (noting that this Court may "affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling").

■ By failing to inform the motion justice of the legal bases for their objection to defendants' motions for summary judgment, plaintiffs have waived the arguments they now present to this Court. At the summary judgment hearing, the motion justice stated her belief that the court had received no objection from plaintiffs.[7] The plaintiffs explained that they had sent the objection to the court and to opposing counsel, but conceded that the objection had been filed *late,* and offered no satisfactory justification for the omission.[8] In any event, the motion justice was unequivocal in that she had no knowledge of the filing, and, therefore, was never apprised of the legal arguments presented therein. Despite this, however, plaintiffs made no effort to provide the motion justice with a copy of the previously filed objection and affidavit or otherwise to inform the motion justice at the hearing of the legal bases for their objection to defendants' motions, despite numerous invitations by the motion justice to do exactly that. Undoubtedly, we think, it was incumbent upon plaintiffs to inform the motion justice of the various legal arguments they now advance before this Court to preserve them for our review. Their failure to do so forces us to conclude that they have waived their claims. *See Thomas v. Ross,* 477 A.2d 950, 953 (R.I.1984) (holding that a party who fails to argue certain issues at trial may not assert those claims for relief at the appellate level).

■ Before concluding, we think it important to note the well-settled principle that, absent express statutory language designating otherwise, an ordinance amendment becomes effective on the date of its passage. *See, e.g.,* 5 Eugene McQuillin, *The Law of Municipal Corporations* § 15:36 at 253 (3d rev. ed. 2004) ("[W]here publication is not required and

---

6. We pause to note that our reference here to federal precedent is not exceptional. Because of the oft-noted fact that Rhode Island's current rules of civil procedure are largely patterned after their federal counterparts, this Court frequently seeks guidance from the federal jurisprudence in deciding novel issues concerning civil process in this state. *See, e.g., Gliottone v. Ethier,* 870 A.2d 1022, 1025 (R.I.2005) ("in situations in which our own case law is sparse in the area of civil procedure, we shall consult the precedents in the federal courts since our Superior Court Rules are patterned after the federal rules").

7. Opposing counsel acknowledged receipt of plaintiffs' objection on Thursday, March 24. PJC Realty managed to reply to this objection, which was filed with the Superior Court on the same day as the objection, Friday, March 25.

8. The plaintiffs explained that they refrained from objecting sooner because, as they understood it, "[the] case [was] about a millimeter away from settling."

there is no time specified either in the charter or ordinance, the ordinance takes effect from the date of its passage."). We stress the corollary, however, that both the state and various municipalities of this jurisdiction are free to assign, by positive enactment, a date or contingency other than the date of passage as the effective date of an ordinance amendment. In fact, we strongly urge the General Assembly and the various municipalities of this state to define, by positive enactment, the "effective date" of an ordinance amendment and to set forth any conditions that necessarily must be satisfied before the thirty-day appeal period provided for in § 45–24–71 begins to run. Furthermore, it is our view that citizens in a participatory democracy deserve that an ordinance amendment in final written form be made available to the public forthwith once it has been passed by a town or city council.

## Conclusion

For the foregoing reasons, the ruling of the Superior Court is affirmed. The record shall be remanded to the Superior Court.